CHARLEEN RUSH, Plaintiff in Error,

*v.*

GREAT AMERICAN INSURANCE COMPANY et al., Defendants in Error.

376 S. W. 2d 454

(*Nashville,* December Term, 1963.)

Opinion filed March 5, 1964.

H. Tom Kittrell, Nashville, for plaintiff in error.

Charles L. Cornelius, Jr., George H. Armistead, Jr., Nashville, for defendants in error.

Mr. Justice White delivered the opinion of the Court.

On or about the 26th day of June, 1961, the plaintiff in error's husband, Richard Rush, was riding on and driving a motor scooter on a highway in Davidson County, Tennessee, when it collided with an automobile belonging to the Great American Insurance Company and being driven by Walter Harry Ostertag. It is alleged that Ostertag, at that time, was on the business and purpose of said insurance company.

Mrs. Rush brought this suit seeking to recover damages for loss of consortium of her husband who received severe personal injuries in the accident. The defendants demurred alleging that there is no warrant in law for the maintenance of such action as the plaintiff brought because she could not maintain such suit at common law and that there is no statute in Tennessee permitting its

maintenance. The trial court sustained the demurrer and dismissed the case.

In the appeal now before us there is a single assignment of error which is to the effect that the trial court committed error in sustaining the demurrer and dismissing the suit.

The brief filed on behalf of the plaintiff in error states that the only question raised by the appeal is whether or not Charleen Rush, the wife, has a right to maintain a suit for the loss of consortium of her husband resulting from his injuries due to the negligence of the third party.

It is alleged in the declaration that the plaintiff's husband was seriously and permanently injured in and about his entire body and that "he received a severe injury to his groin and pelvic regions, in fact, the pubis, sacrum, and coccyx bones of his pelvic region were broken" and his reproductive organs were damaged to such an extent that there is "great doubt as to his virility" and that as a result of said injuries to said husband she "has suffered loss of services of her husband, and she has lost the consortium of her husband, and that these injuries are such that her losses are grave and far reaching."

While the exact question now under consideration has never been considered by us directly, we have considered it obliquely.

The case of *Railroad Co. v. Bentz,* 108 Tenn. 670, 678, 679, 69 S.W. 317, 58 L.R.A. 690 (1902), was reversed because the trial judge charged the jury "to look to the loss of comfort and enjoyment" sustained by her from the negligent fatal injury to her husband in determining the amount of damages to be allowed the widow. Comfort

and enjoyment are elements or parts of the general meaning and understanding of the term consortium.

We have another case decided by this Court to the effect that a widow or next of kin has never been allowed to recover damages for grief or mental anguish, or as solatium, that is, for the loss of moral aid, comfort, counsel and companionship of one who lost his life by negligent injury. *Davidson Benedict Co. v. Severson,* 109 Tenn. 572, 72 S.W. 967 (1902).

These two decisions have been referred to with approval in opinions by our Court of Appeals in the cases of *Potts v. Leigh,* 15 Tenn.App. 1, 8 (1931), and *Johnson v. Faucette,* 15 Tenn.App. 326 (1932).

The importance of the question presented in the instant case has caused us to make a detailed independent research of all of the authorities and we believe that we have read every reported decision on the points in issue.

In the exhaustive brief filed by plaintiff in error the case of *Hitaffer v. Argonne Co.,* 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R. 1366 (1950), cert. denied, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624, is relied upon as the leading authority for the position that the wife may, in modern times, maintain an action for loss of consortium.

In 27 Am.Jur. at 114, it is stated that the wife, in the absence of a statute, does not have the right to maintain a suit for loss of consortium caused by a mere negligent injury inflicted upon the husband. Her loss of consortium resulting from negligence is too remote and indirect to permit her to recover therefor, and hence, it is distinguishable from loss of consortium resulting directly from a wrongful act, as where her husband is intentionally

and wrongfully enticed, seduced, or forced away from her.

In 41 C.J.S. Husband and Wife sec. 404, p. 900 it is said that in the absence of a statute, a wife has no cause of action for the loss of consortium in consequence of personal injuries inflicted on her husband. There are a number of cases cited in the notes in support of this statement.

A wife cannot recover damages on account of personal injuries to her husband whereby she sustained loss of support and loss of consortium. 2 Cooley, Torts 16 (4th ed. 1932).

In 3 Restatement, Torts 496, it is said:

"A married woman is not entitled to recover from one who, by his tortious conduct against her husband has become liable to him for illness or other bodily harm, for harm thereby caused to any of her marital interests or for any expense incurred in providing medical treatment for her husband."

The common law never recognized any right on the part of the wife to the services of her husband. As the social and legal inferior, she could not require him to work for her, and she had at least no common law remedy for deprivation of his society, intercourse and affections. He was legally bound to provide for her and she was entitled to his support; but any injury to him did not terminate that obligation, and the tort-feasor was liable to the husband himself for any loss of earning power. It followed that there could be no additional recovery on behalf of the wife, even after the Married Woman's Act had removed her procedural disabilities

and permitted her to sue in her own name. Prosser, Torts 703, 704 (2d ed. 1955).

In 1 Harper & James, Torts 641 (1956), it is stated that the authority against the allowance of recovery is almost unanimous, but the author does cite the Hitaffer case, supra, from the District of Columbia.

In our consideration of the instant case the Hitaffer case is much less persuasive because of the fact that it was decided in the District of Columbia where the courts are not bound, as we are, by the common law. As was said in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, ''There is no federal general common law.'' In addition, Hitaffer involved the construction of a workmen's compensation statute, a matter not here involved.

In 1954 the United States Circuit Court of Appeals for the Ninth Circuit dismissed a wife's action brought under the Federal Tort Claims Act to recover for loss of consortium allegedly due to negligent injury to her husband resulting from an automobile injury in the State of California.

The court said that it had been urged to apply the law of the District of Columbia and not that of California to the case under consideration. In reply the court said:

''In the face of the fact that the law elsewhere is so nearly unanimous against a recovery such as that here sought, we find ourselves unable to say and we are unwilling to hold that the law of California at present recognizes the right of a wife to bring such an action.'' *Filice v. United States,* 9 Cir., 217 F.2d 515 (1954).

According to our investigation the ground for recovery by the husband at the common law was that he had lost the services of his wife to perform her household duties such as cooking meals, taking care of the children and keeping the house, etc., and finally, it was said that he also was entitled to her society, her consortium, and out of that, within its general ambit, it was held that he was entitled to her love, affection, companionship, etc., all welded into a conceptualistic unity.

The courts throughout the years have experienced great difficulty in defining and limiting the meaning of consortium and on occasions it has been said that it embraces "intangibles" and "indefinables."

Within recent times the text writers have generally agreed that the wife should be permitted a recovery for loss of the consortium of her husband. They argue that to allow such an action by the husband and at the same time deny it to the wife is inconsistent within the modern statutes giving married women equal rights to sue with their husbands and that the wives have an equal interest in consortium—whatever the term may include—with their husbands.

Until the decision in the Hitaffer case the text writers stood alone in their view.

A few jurisdictions have followed Hitaffer but most of them continue to deny the wife's claim.

In 23 A.L.R.2d 1389 it is said that while a wife may have an action for loss of her husband's consortium where the invasion of the right is *intentional,* and even though the husband's right to such an action is recognized where the injury to the wife is a result of the negligence of the

defendant, the great weight of authority denies to the wife a right of action for loss of consortium resulting from a negligent injury to her husband.

The 1964 Supplement to the annotation in 23 A.L.R.2d, supra, refers to additional cases pro and con on the subject. Some of the reasons given for recognizing the right of action have been set out above and some of the reasons for denying recovery are: (1) that the injury to the wife is indirect or too remote; (2) that a double recovery for one injury would or could result; (3) that the wife has no common law or statutory right to the services of her husband; and, finally, that the married women's act did not give to them express authority to maintain such an action.

The dissenting opinion written by Chief Justice Schaefer in the case of *Dini v. Naiditch*, 20 Ill.2d 406, 170 N.E. 2d 881, 86 A.L.R.2d 1184 (1960), in criticizing the opinion of the majority, said:

"When two overlapping causes of action are made to grow where one has grown before, the possibility of double recovery is real.

\* \* \* \* \* \*

"Subject to legislative action, it is the function of the common-law court, in a case like this, to fix the boundaries within which an injury to one person gives another a right to recover damages. Each man's life is linked to the lives of many others, and an injury to one inevitably has its impact upon the lives of others. So far as I am aware, however, it has never been suggested that everyone who is adversely affected by an injury inflicted upon another should be allowed to recover his damages.

514

*  *  *  *  *  *

"I think that this court should refuse to sanction the new action, as other courts that squarely faced the substantive and procedural problems have done. *Kronenbitter v. Washburn Wire Co.,* 1958, 4 N.Y.2d 524, 176 N.Y.S.2d 354, 151 N.E.2d 898; *Deshotel v. Atchison, Topeka & Santa Fe R. Co.,* 1958, 50 Cal.2d 664, 328 F.2d 449; *Neuberg v. Bobowicz,* 1960, 401 Pa. 146, 162 A.2d 662; *Snodgrass v. Cherry-Burrell Corp.,* N.H. 1960 [103 N.H. 56], 164 A.2d 579."

In the case of *Snodgrass v. Cherry-Burrell Corp.,* supra, it was held that any recompense to wife for a negligent injury, as distinguished from intentional injury, to conjugal relation must be derived indirectly out of recovery by husband and through his performance and his obligation to support a wife.

That court in denying the right of the wife to bring the action said that the holding in the Hitaffer case had been adopted by a few jurisdictions, but in most where the question has arisen the recovery for the wife has been denied. Thus, the great weight of authority is opposed to the proposition advanced by the plaintiff in this case.

In the case of *Nickel v. Hardware Mutual Casualty Co.,* 269 Wis. 647, 70 N.W.2d 205 (1955), the Supreme Court affirmed the action of the trial judge in sustaining a demurrer to the suit brought by a wife for loss of consortium of her husband caused by the negligent act of a third person. That court said that a rule of the common law (denial of the right of recovery) so universally and persistently adhered to by courts of sister states and declared by text writers should not be ignored unless a

legislative intent to abrogate it has been clearly expressed.

The Wisconsin Court also pointed out that the Court of Appeals of the Seventh Circuit in *Seymour v. Union News Co.*, 217 F.2d 168 (1954), and the Court of Appeals of the Ninth Circuit in *Filice v. United States*, 217 F.2d 515 (1954), had followed the majority rule, denial of recovery, rather than the holding of the Court of Appeals of the District of Columbia.

In the case of *Seagraves v. Legg*, 127 S.E.2d 605 (1962), the Supreme Court of West Virginia held that since the common law did not permit a wife to maintain an action for loss of consortium of her husband due to negligence of a third party, and that no such right had been provided by any act of the Legislature to change or alter the common law rule in that state, that the common law rule of denial of recovery continued to be the law of that state.

The Supreme Court of Florida in the case of *Ripley v. Ewell*, 61 So.2d 420 (1952), held that a wife at common law could not sue for loss of consortium. Florida is a common law state. Hence, there could be no recovery since there has been no statutory change permitting such an action. The court said:

"While we should not hesitate to declare the law as we find it, even though the unwary who have been ill advised in their action may suffer, we should not by judicial fiat make changes in established law that will injuriously affect many persons who could not possibly foresee or anticipate such action on our part."

Tennessee is a common law state. "[S]o much of the common law as has not been abrogated or repealed

by statute is in full force and effect in this State." *Cogburn v. State,* 198 Tenn. 431, 434, 281 S.W.2d 38, 39 (1955).

■ The entire body of the common law as it existed when the Tennessee Constitution went into effect was made the law of this State by that instrument; but these laws may be altered, amended, repealed or added to by subsequent legislatures, within the restrictions imposed on legislation by our Constitution. See *Henley v. State,* 98 Tenn. 665, 41 S.W. 352, 1104, 39 L.R.A. 126 (1897); Article XI, Section 1, Constitution of Tennessee.

In the case of *Smith v. United Construction Workers, District 50,* 271 Ala. 42, 122 So.2d 153 (1960), the Supreme Court of Alabama had the exact question before it. That court said:

"Appellant admits at the outset that no cause of action for loss of consortium of the husband existed in a wife at common law. She, however, asked this court to follow the small minority of the courts which have seen fit to create such an action followed in the case of *Hitaffer v. Argonne Co.* [supra]."

The court said that it felt compelled to follow the common law on any subject when it had not been changed by the legislative branch of government.

"* * * we can but say that it is not our function to change the law, but to determine what it is. The former is vested totally in the legislature." 122 So.2d at 155.

■ The primary function of this Court is to interpret and apply the law to given situations. To legislate is wholly foreign to our duty.

The Act which removed the married women's disabilities of coverture in 1913, T.C.A. sec. 36-601, did not confer any substantive rights of action upon women but merely removed their common law disabilities as therein set out.

In *Southern Railway Co. v. Maples,* 201 Tenn. 85, 91, 296 S.W.2d 870, 873 (1956), this Court held that:

"* * * it is settled law in this State that rules of the common law are not repealed by implication. * * * 'If the statute does not include and cover such a case, it leaves the law as it was before its enactment.'"

We think it is significant, but not controlling, that since the passage of said Act, Chapter 26, Public Acts of 1913, a period of more than fifty years, no suit has been successfully brought to recover for an alleged wrong as herein set out.

The common law right to an action by the husband for damages for loss of his wife's services and consortium was not taken away by the Married Women's Emancipation Act, but still persists in the husband. *Dunn v. Alabama Oil & Gas Co.,* 42 Tenn.App. 108, 115, 299 S.W.2d 25 (1956); *City of Chattanooga v. Carter,* 132 Tenn. 609, 179 S.W. 127 (1915); *Johnston v. Southern Ry. Co.,* 155 Tenn. 639, 299 S.W. 785, 55 A.L.R. 932 (1927); *All v. John Gerber Co.,* 36 Tenn.App. 134, 252 S.W.2d 138 (1952).

The North Carolina Supreme Court, in 1921, held that the wife had the right to sue in her own name for the loss of consortium due to the injury of her husband as a result of the negligence of the third party. See *Hipp v. E. I. Dupont de Nemours & Co.,* 182 N.C. 9, 108 S.E. 318 (1921), 18 A.L.R. 873, 23 A.L.R.2d 1386. However, this

decision was overruled four years later by the same court in the case of *Hinnant v Tidewater Power Co.,* 189 N.C. 120, 126 S.E. 307 (1925), 37 A.L.R. 889; 23 A.L.R. 2d 1389.

There are more than eighteen cases decided in recent years by the courts of last resort stating that the great weight of authority denies to the wife a right of action for loss of consortium resulting from negligent injury to her husband.

Six state courts have permitted such suits, some in bare majority decisions with strong dissenting opinions, and some of the decisions were based on statutory authority.

The Supreme Court of California first permitted the recovery on the ground that the wife was entitled to the same right as the husband. In a later decision it was decided that the husband had lost his status under the common law and he was not entitled to maintain such a suit, and in view of this conclusion the California Court now denies the action to both the husband and wife. As indicated above, we have held that the husband's right to recover damages for loss of his wife's services was not taken away by the Married Women's Emancipation Act.

We do not think it is within our province to create in this State a new action which was unknown at the common law and has not been provided for by statute. In other words, we believe this to be a matter for the decision of the Legislature and not for the courts. Such matters are committed to the intelligence and discretion of the members thereof and the courts will not run a

race of opinions with these representatives of the people upon the question of the wisdom and propriety of such legislation.

Therefore, the action of the trial court in sustaining the demurrer and dismissing this suit is affirmed.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.